CENTER FOR DISABILITY ACCESS
Ray Ballister, Jr., Esq., SBN 111282
Mark Potter, Esq., SBN 166317
Phyl Grace, Esq., SBN 171771
Dennis Price, SBN 279082
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Scott Johnson**, | Case No. |
| Plaintiff, | |
| v. | **Complaint For Damages And Injunctive Relief For** Violations Of: American's With Disabilities Act; Unruh Civil Rights Act |
| **Dirito Real Estate, LLC,** a California Limited Liability Company; **Autocom Energy, LLC,** a California Limited Liability Company; and Does 1-10, | |
| Defendants. | |

Plaintiff Scott Johnson complains of Defendants Dirito Real Estate, LLC; Autocom Energy, LLC; and Does 1-10 ("Defendants"), and alleges as follows:

**PARTIES:**

1. Plaintiff is a California resident with physical disabilities. Plaintiff is a level C-5 quadriplegic. He cannot walk and also has significant manual dexterity impairments. He uses a wheelchair for mobility and has a specially equipped van.

1

Complaint

2.   In March 2015, Dirito Real Estate, LLC was the real property owner of the building/parcel located at or about 1840 N. Main St. Walnut Creek, California, where Autocom Nissan, (hereinafter referred to as "Nissan") was located.

3.   In October 2015, Dirito Real Estate, LLC was the real property owner of the building/parcel located at or about 1840 N. Main St. Walnut Creek, California.

4.   In November 2015, Dirito Real Estate, LLC was the real property owner of the building/parcel located at or about 1840 N. Main St. Walnut Creek, California.

5.   In December 2015, Dirito Real Estate, LLC was the real property owner of the building/parcel located at or about 1840 N. Main St. Walnut Creek, California.

6.   Currently, Defendant Dirito Real Estate, LLC is the real property owner of the building/parcel located at or about 1840 N. Main St. Walnut Creek, California.

7.   In March 2015, Defendant Autocom Energy, LLC was the business owner of Nissan.

8.   In October 2015, Defendant Autocom Energy, LLC was the business owner of Nissan.

9.   In November 2015, Defendant Autocom Energy, LLC was the business owner of Nissan.

10. In December 2015, Defendant Autocom Energy, LLC was the business owner of Nissan.

11. Currently, Defendant Autocom Energy, LLC is the business owner of Nissan.

12. Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their

Complaint

relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

**JURISDICTION & VENUE:**

13. The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

14. Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

15. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

**FACTUAL ALLEGATIONS:**

16. Nissan is a facility open to the public, a place of public accommodation, and a business establishment.

17. Parking spaces are one of the facilities, privileges and advantages offered by Defendants to patrons of Nissan.

18. Unfortunately, the parking lot serving Nissan is not accessible to persons with disabilities.

Complaint

19. Although in March 2015, Nissan offered parking marked and reserved for person with disabilities, Defendants failed to maintain the parking spaces in compliance with the Americans with Disabilities Act Accessibility Guidelines (ADAAG).

20. In March 2015, not all of the spaces marked and reserved for persons with disabilities at Nisan had an adjacent access aisle.

21. In March 2015, the required "Minimum Fine $250" signs did not exist at all of the spaces marked and reserved for persons with disabilities.

22. In March 2015, the required tow-away signage did not exist at all of the spaces marked and reserved for persons with disabilities.

23. In March 2015, Defendants had no policy or procedure in place to maintain their parking spaces so that they remained compliant and useable by persons with disabilities.

24. In October 2015, although Nissan offered parking marked and reserved for person with disabilities, Defendants failed to maintain the parking spaces in compliance with the ADAAG.

25. In October 2015, not all of the spaces marked and reserved for persons with disabilities at Nisan had an adjacent access aisle.

26. In October 2015, the required "Minimum Fine $250" signs did not exist at all of the spaces marked and reserved for persons with disabilities.

27. In October 2015, the required tow-away signage did not exist at all of the spaces marked and reserved for persons with disabilities.

28. In October 2015, Defendants had no policy or procedure in place to maintain their parking spaces so that they remained compliant and useable by persons with disabilities.

29. In November 2015, although Nissan offered parking marked and reserved for person with disabilities, Defendants failed to maintain the parking spaces in compliance with the ADAAG.

Complaint

30. In November 2015, not all of the spaces marked and reserved for persons with disabilities at Nisan had an adjacent access aisle.

31. In November 2015, the required "Minimum Fine $250" signs did not exist at all of the spaces marked and reserved for persons with disabilities.

32. In November 2015, the required tow-away signage did not exist at all of the spaces marked and reserved for persons with disabilities.

33. In November 2015, Defendants had no policy or procedure in place to maintain their parking spaces so that they remained compliant and useable by persons with disabilities.

34. In December 2015, although Nissan offered parking marked and reserved for person with disabilities, Defendants failed to maintain the parking spaces in compliance with the ADAAG.

35. In December 2015, not all of the spaces marked and reserved for persons with disabilities at Nisan had an adjacent access aisle.

36. In December 2015, the required "Minimum Fine $250" signs did not exist at all of the spaces marked and reserved for persons with disabilities.

37. In December 2015, the required tow-away signage did not exist at all of the spaces marked and reserved for persons with disabilities.

38. In December 2015, Defendants had no policy or procedure in place to maintain their parking spaces so that they remained compliant and useable by persons with disabilities.

39. Because the parking was not accessible to disabled persons, Plaintiff was forced to either park in a non-disabled space or leave Nissan altogether.

40. Currently, although Nissan offers parking marked and reserved for person with disabilities, Defendants fail to maintain the parking spaces in compliance with the ADAAG.

41. Currently, not all of the spaces marked and reserved for persons with disabilities at Nisan have an adjacent access aisle.

Complaint

42. Currently, the required "Minimum Fine $250" signs do not exist at all of the spaces marked and reserved for persons with disabilities.

43. Currently, the required tow-away signage do not exist at all of the spaces marked and reserved for persons with disabilities.

44. Currently, Defendants have no policy or procedure in place to maintain their parking spaces so that they remain compliant and useable by persons with disabilities.

45. Paths of travel are also one of the facilities, privileges, and advantages offered by Defendants to patrons of Nissan.

46. In March 2015, there was no marked accessible path of travel from the parking to the front entrance of Nissan.

47. In October 2015, there was no marked accessible path of travel from the parking to the front entrance of Nissan.

48. In November 2015, there was no marked accessible path of travel from the parking to the front entrance of Nissan.

49. In December 2015, there was no marked accessible path of travel from the parking to the front entrance of Nissan.

50. Currently, there is no marked accessible path of travel from the parking to the front entrance of Nissan.

51. Additionally, the entrance door is not accessible to persons with disabilities.

52. In March 2015, the entrance door at Nissan had traditional panel style hardware that required tight grasping or twisting of the wrist to operate.

53. In October 2015, the entrance door at Nissan had traditional panel style hardware that required tight grasping or twisting of the wrist to operate.

54. In November 2015, the entrance door at Nissan had traditional panel style hardware that required tight grasping or twisting of the wrist to operate.

55. In December 2015, the entrance door at Nissan had traditional panel

Complaint

style hardware that required tight grasping or twisting of the wrist to operate.

56. Currently, the entrance door at Nissan has traditional panel style hardware that requires tight grasping or twisting of the wrist to operate.

57. Transaction counters are also one of the facilities, privileges, and advantages offered to patrons at Nissan.

58. However, in March 2015, the cashier counter at Nissan was more than 36 inches in height.

59. In March 2015, there was no lowered, 36-inch or lower portion of the cashier counter at Nissan for use by persons with disabilities.

60. In March 2015, the counter in the Parts Department at Nissan was more than 36 inches in height.

61. In March 2015, there was no lowered, 36-inch or lower portion of the Parts Department counter parts at Nissan for use by persons with disabilities.

62. In March 2015, there was no auxiliary Parts Department counter.

63. In October 2015, the cashier counter at Nissan was more than 36 inches in height.

64. In October 2015, there was no lowered, 36-inch or lower portion of the cashier counter at Nissan for use by persons with disabilities.

65. In October 2015, the counter in the Parts Department at Nissan was more than 36 inches in height.

66. In October 2015, there was no lowered, 36-inch or lower portion of the Parts Department counter parts at Nissan for use by persons with disabilities.

67. In October 2015, there was no auxiliary Parts Department counter.

68. In November 2015, the cashier counter at Nissan was more than 36 inches in height.

69. In November 2015, there was no lowered, 36-inch or lower portion of the cashier counter at Nissan for use by persons with disabilities.

70. In November 2015, the counter in the Parts Department at Nissan was

Complaint

more than 36 inches in height.

71. In November 2015, there was no lowered, 36-inch or lower portion of the Parts Department counter parts at Nissan for use by persons with disabilities.

72. In November 2015, there was no auxiliary Parts Department counter.

73. In December 2015, the cashier counter at Nissan was more than 36 inches in height.

74. In December 2015, there was no lowered, 36-inch or lower portion of the cashier counter at Nissan for use by persons with disabilities.

75.

76. In December 2015, the counter in the Parts Department at Nissan was more than 36 inches in height.

77. In December 2015, there was no lowered, 36-inch or lower portion of the Parts Department counter parts at Nissan for use by persons with disabilities.

78. In December 2015, there was no auxiliary Parts Department counter.

79. Currently, the cashier counter at Nissan is more than 36 inches in height.

80. Currently, there is no lowered, 36-inch or lower portion of the cashier counter at Nissan for use by persons with disabilities.

81. Currently, the counter in the Parts Department at Nissan is more than 36 inches in height.

82. Currently, there is no lowered, 36-inch or lower portion of the Parts Department counter parts at Nissan for use by persons with disabilities.

83. Currently, there is no auxiliary Parts Department counter.

84. Restrooms are one of the facilities, privileges, and advantages offered by Defendants to patrons of Nissan.

85. And although Plaintiff did not personally confront this barrier, Plaintiff

Complaint

alleges that the restrooms at Nissan are inaccessible to persons with disabilities.

86. In March 2015, the restroom door hardware was a traditional knob style handle that required tight grasping or twisting of the wrist to operate.

87. In March 2015, the restroom mirror was mounted on the wall so that its bottom edge was more than 40 inches above the floor and was not effectively used by wheelchair users.

88. In October 2015, the restroom door hardware was a traditional knob style handle that required tight grasping or twisting of the wrist to operate.

89. In October 2015, the restroom mirror was mounted on the wall so that its bottom edge was more than 40 inches above the floor and was not effectively used by wheelchair users.

90. In November 2015, the restroom door hardware was a traditional knob style handle that required tight grasping or twisting of the wrist to operate.

91. In November 2015, the restroom mirror was mounted on the wall so that its bottom edge was more than 40 inches above the floor and was not effectively used by wheelchair users.

92. In December 2015, the restroom door hardware was a traditional knob style handle that required tight grasping or twisting of the wrist to operate.

93. In December 2015, the restroom mirror was mounted on the wall so that its bottom edge was more than 40 inches above the floor and was not effectively used by wheelchair users.

94. Currently, the restroom door hardware is a traditional knob style handle that required tight grasping or twisting of the wrist to operate.

95. Currently, the restroom mirror is mounted on the wall so that its bottom edge is more than 40 inches above the floor and is not effectively used by wheelchair users.

96. Plaintiff visited Nissan in March 2015.

Complaint

97. Plaintiff visited Nissan in October 2015.

98. Plaintiff visited Nissan in November 2015.

99. Plaintiff visited Nissan in December 2015.

100.    Plaintiff personally encountered these violations and they denied him full and equal access.

101.    Plaintiff would like to return and patronize Nissan but will be deterred from visiting until the defendants cure the violations.

102.    The violations identified above are easily removed without much difficulty or expense. They are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable to remove. Moreover, there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable.

103.    Additionally, on information and belief, the plaintiff alleges that the failure to remove these barriers was intentional because: (1) these particular barriers are intuitive and obvious; (2) the defendants exercised control and dominion over the conditions at this location and, therefore, the lack of accessible facilities was not an "accident" because, had the defendants intended any other configuration, they had the means and ability to make the change.

104.    Given the obvious and blatant violation, the plaintiff alleges, on information and belief, that there are other violations and barriers on the site that relate to her disability. Plaintiff will amend the Complaint to provide proper notice regarding the scope of this lawsuit once she conducts a site inspection. However, please be on notice that the plaintiff seeks to have all barriers related to her disability remedied. See *Doran v. 7-11*, 506 F.3d 1191 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, he can sue to have all barriers that relate to her disability removed regardless

Complaint

of whether he personally encountered them).

105.     Plaintiff is and has been deterred from returning and patronizing the Nissan because of his knowledge of the illegal barriers that exist. Plaintiff will, nonetheless, return to the business to assess ongoing compliance with the ADA and will return to patronize the Nissan as a customer once the barriers are removed.

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of Plaintiff and against all Defendants.) (42  U.S.C. section 12101, et seq.)

106.     Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

107.     Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

    a.   A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

    b.   A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D."

Complaint

c. A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a)(2).

108.    Any business that provides parking spaces must provide accessible parking spaces. 1991 Standards § 4.1.2(5); 2010 Standards § 208. To qualify as a reserved handicap parking space, the space must be properly marked and designated. Under the ADA, the method, color of marking, and length of the parking space are to be addressed by state or local laws or regulations. See 36 C.F.R., Part 1191, § 502.3.3. Under the California Building Code, to properly and effectively reserve a parking space for persons with disabilities, each parking space must be at least 216 inches in length. CBC § 11B-502.2. The access aisle must extend the full length of the parking spaces it serves. 2010 Standards § 502.3.2. Under the California Building Code, to properly and effectively reserve a parking space for persons with disabilities, each such space must be identified with a reflectorized sign permanently posted adjacent to and visible from each stall or space. CBC § 1129B.4. The sign must consist of the International Symbol of Accessibility (♿) in white on a blue background. *Id.* It cannot be smaller than 70 square inches and must be mounted so that there is a minimum of 80 inches from the bottom of the sign to the parking space. *Id.* Signs must be posted so that they cannot be obscured by a vehicle parking in the space. *Id.* An additional sign or additional language below the symbol of accessibility must state, "Minimum Fine $250" to ensure that the space remains available for persons with disabilities. *Id.* Another sign

Complaint

must be posted in a conspicuous place at the entrance to the parking lot or immediately adjacent to each handicap parking space, with lettering 1 inch in height, that clearly and conspicuously warn that unauthorized vehicles parking in the handicap parking spaces can be towed at the owner's expense. *Id.* Additionally, the surface of the handicap parking stall must have a profile view of a wheelchair occupant (♿) that is 36 inches by 36 inches. *Id.* And the surface of the access aisle must have a blue border. CBC § 1129B.3. The words "NO PARKING" in letters at least a foot high must be painted on the access aisle. *Id.*

109.     Here, Defendants failed to provide disabled spaces of adequate length.

110.     Here, Defendants failed to post the required "Minimum Fine $250" signs, in violation of the ADA.

111.     Here, Defendants failed to post the required tow-away signage, in violation of the ADA.

112.     Here, the parking simply failed to comply.

113.     Each accessible parking stall must have an access aisle adjacent to it. Standard accessible parking stalls can have a 60 inch wide access while van accessible stalls must have a 96 inch wide access aisle. 1991 Standards § 4.1.2 (5) (a) & (b) and 2010 Standards § 502.2. The access aisle must extend the full length of the parking spaces it serves. *Id.* at § 502.3.2.

114.     Here, the failure to have an access aisle is a violation of the ADA.

115.     Under the ADA, there must be an accessible route within the boundary of the site from the accessible parking to the accessible building entrance they serve. 1991 Standards § 4.3.2(1); 2010 Standards § 206.2. The accessible route shall, to the maximum extent feasible, coincide with the route for the general public. *Id.* The accessible route must be at least 36 inches in width except at doors. 1991 Standards § 4.3.3; 2010 Standards § 403.5.1.

Complaint

116.     Here, the failure to provide an accessible path of travel from the handicap parking space to the entrance is a violation of the ADA.

117.     Door hardware must have a shape that is easy to grasp with one hand and does not require tight grasping, tight pinching, or twisting of the wrist to operate. 1991 Standards § 4.13.9; 2010 Standards § 404.2.7.

118.     Here the failure to provide such door hardware is a violation of the ADA.

119.     In areas used for transactions where counters have cash registers and are provided for sales or distribution of goods or services to the public, at least one of each type shall have a portion of the counter which is at least 36 inches in length with a maximum height of 36 inches above the floor. 1991 Standards § 7.2(1). Under the 2010 Standards, where the approach to the sales or service counter is a parallel approach, such as in this case, there must be a portion of the sales counter that is no higher than 36 inches above the floor and 36 inches in width and must extend the same depth as the rest of the sales or service counter top. 2010 Standards § 904.4 & 904.4.1.

120.     Here, no such accessible cashier counter or a lowered, 36 inch counter has been provided in violation of the ADA.

121.     In areas used for transactions that may not have a cash register but at which goods or services are sold or distributed, the business must provide either: (1) a portion of the main counter which is a minimum of 36 in inches length shall be provided with a maximum height of 36 inches; or (2) an auxiliary counter with a maximum height of 36 inches in close proximity to the main counter; or (3) some sort of qualifying equivalent facilitation. 1991 Standards § 7.2(2). Under the 2010 Standards, where the approach to the sales or service counter is a parallel approach, such as in this case, there must be a portion of the sales counter that is no higher than 36 inches above the floor and 36 inches in width and must extend the same depth as the rest of the sales or

Complaint

service counter top. 2010 Standards § 904.4 & 904.4.1.

122.     Here, no such accessible transaction counter has been provided in violation of the ADA.

123.     Restroom door hardware must have handles and other operating devices that have a shape that is easy to use with one hand and does not require tight grasping, tight pinching, or twisting of the wrist to operate. 1991 Standards § 4.23.2; 4.13.9; 2010 Standards § 404.2.7; 309.4.

124.     Here, the failure to provide accessible restroom door hardware is a violation of the ADA.

125.     Mirrors shall be mounted with the bottom edge of the reflecting surface no higher than 40 inches above the finish floor. 1991 Standards § 4.19.6; 2010 Standards § 603.3.

126.     Here, the mirror was mounted higher than the maximum permitted and is a violation of the ADA.

127.     A public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be readily accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211(a).

128.     Here, the failure to ensure that the accessible facilities were available and ready to be used by the plaintiff is a violation of the law.

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of Plaintiff and against all Defendants.) (Cal. Civ. Code § 51-53.)

129.     Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

130.     Because the defendants violated the plaintiff's rights under the

Complaint

ADA, they also violated the Unruh Civil Rights Act and are liable for damages. (Cal. Civ. Code § 51(f), 52(a).)

131.    Because the violation of the Unruh Civil Rights Act resulted in difficulty, discomfort or embarrassment for the plaintiff, the defendants are also each responsible for statutory damages, i.e., a civil penalty. (Cal. Civ. Code § 55.56(a)-(c).)

132.    Although the plaintiff was markedly frustrated by facing discriminatory barriers and this frustration possibly qualifies as an emotional distress injury, even manifesting itself with minor and fleeting physical symptoms, the plaintiff does not value this very modest frustration and physical personal injury greater than the amount of the statutory damages.

**PRAYER**:

Wherefore, Plaintiff prays that this Court award damages and provide relief as follows:

1. For injunctive relief, compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

2. Damages under the Unruh Civil Rights Act, which provides for actual damages and a statutory minimum of $4,000.

3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; and Cal. Civ. Code §§ 52.

Dated: March 31, 2016                    CENTER FOR DISABILITY ACCESS

By: _____
Mark Potter, Esq.
Attorneys for Plaintiff

Complaint

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

17

Complaint